COLUMBIA MACHINE & STOPPER CORPORATION v. ADRIANCE MACH. WORKS, Inc., et al.

SAME v. RUBSAM & HORMANN BREWING CO.

(District Court, E. D. New York. March 3, 1915.)

PATENTS ⊂⇒328—INFRINGEMENT—BOTTLE SEALING MACHINE.

The Lawson patent, No. 1,095,406, for an improvement in machines for applying bottle closures, claim 6, construed, and *held* infringed.

In Equity. Suits by the Columbia Machine & Stopper Corporation, one against the Adriance Machine Works, Incorporated, and Benjamin Adriance, and the other against the Rubsam & Hormann Brewing Company. On final hearing. Decrees for complainant.

Henry D. Williams, of New York City, for complainant.
Alfred C. Coxe, Jr., of New York City, John W. Steward, of Pater-son, N. J., and Charles Neave, of New York City, for defendants.

VEEDER, District Judge. Two suits by the complainant for infringement of the sixth claim of patent No. 1,095,406, issued May 5, 1914, to the complainant, as assignee of Clarence J. Lawson, for an improvement in machines for applying bottle closures. The first suit is based upon the manufacture and sale of infringing machines; the second, on use. In the first suit the defendant Adriance is the president of the defendant Adriance Machine Works, Incorporated, and the owner of patent No. 1,096,521, issued to Adriance and Calleson, on May 12, 1914, and of patent No. 1,096,527, issued to Calleson, for bottle sealing machines. The identical claim in issue was asserted by Adriance and Calleson in an application in interference with the application for the Lawson patent in suit. Lawson prevailed, and the patent was issued to him. No machine constructed in accordance with the Adriance and Calleson patent was sold or used by either of the defendants. After the construction of a single experimental machine under that patent, all subsequent machines were constructed under the patent granted on the sole application of Calleson. The second suit is based upon the use of two machines purchased from the defendants, one before and the other after the issuance of the patent in suit, and differing only with respect to the form of cam used.

The specification of the patent in suit describes the invention as relating to:

"Improvement in automatic machines for applying bottle closures to the necks of bottles, in which a bottle capping head and a bottle support are reciprocated with respect to one another for the purpose of applying a bottle closure to the neck of an interposed bottle, and my objects are the production of a mechanically simple and strong machine which will perform the operations reliably, successfully and quickly with a minimum of human attendance."

The means devised for this purpose are described in the claim in issue:

"A closure applying machine, comprising a base, a main shaft extending vertically therethrough; a bottle support concentric with the shaft; means for imparting rotary motion to the shaft; a sleeve around said shaft above the table; a sealing head mounted on said sleeve; a cam ring on the shaft, the groove of which engages the sealing head for imparting a reciprocating motion thereto upon the revolution of the shaft."

It admits of no doubt that this machine embodies a highly useful and simple combination of elements whereby a sealing head is positively raised and lowered to perform the operation of capping bottles smoothly, swiftly, and with certainty of operation. Smoothness and uniformity of operation are essentials in a machine operating upon brittle glass bottles, usually filled with a gas-charged or carbonated liquid which must not be agitated. The complainant's machine, operated with three sealing heads, caps over 90 bottles per minute, with a percentage of breakage of one-tenth of 1 per cent., as compared with 2 per cent. usually allowed theretofore.

The patent in suit is expressly described as an improvement in automatic machines for applying bottle closures. Bottle capping machines with reciprocating parts were not new; nor is any novelty claimed for the sealing heads. Lawsons's patent deals with the means and organization by which sealing heads are brought into operative relation with the bottles upon which they are to act. As such it clearly disclosed patentable invention. This is shown by the three prior patents cited by the defendants' counsel in his final argument, not, so far as appears, in anticipation of the patent in suit, but as an indication of the prior art: Brewington patent, No. 860,787, dated July 23, 1907, for a bottle capping machine; Macdonell patent, No. 211,413, dated January 14, 1879, for machinery for filling and corking bottles; Seger patent, No. 375,776, dated January 3, 1888, for a capsule machine. In the Brewington patent the cam, arranged above the sealing head, forces the sealing head down, but its return is due to a spring. Moreover, the patent also shows the cam as stationary and the heads rotating thereunder. In the Macdonell patent the corking machine revolves around a stationary shaft on which there are three stationary cams. The bottles are carried on separate spring supports, and are raised and lowered as the frame revolves about the stationary shaft. Instead of a sealing head, the machine has a cork holder, which does not move vertically. The bottle is lifted up, so that its neck enters the mouth of the cork holder, when a cork, placed by hand in the holder, is pushed down into the bottle by a plunger. The Seger patent is for a machine to make metal capsules by the successive action of a series of dies. At most, it discloses a grooved barrel cam having a plurality of grooves and operating reciprocating parts.

I do not understand it to be seriously denied that the machine described in the Adriance and Calleson patent would infringe the patent in suit. The material consideration is whether the defendants' machine, made in accordance with the Calleson patent, infringes. Objectively the principal difference between the defendants' machine and the machine of the patent in suit is that in the former the power is supplied from above, while in the latter it is supplied from below. In the complainant's machine a main shaft extends vertically through the base, where means are provided for operating the concentric table support. In the Calleson machine the main shaft extends down into the base, where, likewise, means are provided rotating the concentric bottle support. The claim in issue calls for:

"A closure applying machine comprising a base; a main shaft extending vertically therethrough; a bottle support concentric with the shaft; means for imparting rotary motion to the shaft."

It is not to be supposed, the defendant argues, that the patents prescribed a main shaft extending vertically through the base merely to indicate that the base was a support for the shaft; it must have been intended that the shaft should have some special function because of that detail of construction, and the reason was that he thereby emphasized the fact that the driving means in his machine must all be below in the base of the machine. The answer to this argument is that the claim does not specify the location of the means for impart-

ing a rotary motion to the shaft. It may be located anywhere, so long as it performs the prescribed function of imparting a rotary motion to the shaft.

The claim specifies "a bottle support concentric with the shaft." There is no limitation with respect to the manner in which this bottle support shall be actuated. As a matter of fact, in the complainant's machine it is rotated intermittently, while in the defendants' machine it is rotated continuously. During the cap-applying operation the movement of the bottle support is stopped in the complainant's machine; in the defendants' machine the sealing heads are moved horizontally with the bottle support. This difference, not included in the claim in suit, necessitates the oscillating movement of the sealing heads in defendants' machine, which requires a cylindrical guideway for the sealing heads.

The defendants' contention centers mainly upon the two clauses of the claim in issue specifying:

"A sleeve around said shaft above the table; a sealing head mounted on said sleeve."

In the Lawson patent in suit the sleeve is made up of three parts: The lower part, 29; the upper part, 30; and the small threaded part, 30', joining them. The specification twice refers to part 30, as "the upper 30 of the sleeve," and as "the upper part of the sleeve." The two main parts of the sleeve, 29 and 30, are otherwise named for purposes of description as the "cam ring support, 30," and the "sleeve, 29." It is stated that the cam ring support carries three sealing heads and provides a guideway for the sealing heads.

The sleeve of the defendants' Calleson patent undoubtedly differs in detail of construction from the sleeve of the patent in suit; but there is no difference in function, and the terms of the claim in issue apply. The sleeve of the Calleson patent includes the part, b, having at its lower end an integral part, c, which fits upon and forms the lower bearing for the main shaft, x, and has rigidly bolted to it a part, w, forming a supporting or step bearing for the shaft, together with the upper part or head, g h, which fits upon and forms the upper bearing for the main shaft, x. This sleeve extends around the shaft above the table and has the sealing heads mounted upon it, and two sealing heads, reciprocated as a unit, being mounted on one carrier, which includes the reciprocating sleeve, r, fitted over and sliding upon the part, b; the sleeve of the claim thus forming a guideway for the reciprocating movement of the sealing heads. The difference in construction arises mainly from the fact that in the defendants' machine the adjusting means, which is not an element of the claim in suit, has been shifted from the sleeve to the carrier for the sealing heads. Adjustment does not take place, however, during operation, and, if operation were confined to bottles of one size, no adjustment would be necessary.

This matter of adjustment also has a direct bearing upon the question raised whether the cam ring, 31, of the patent in suit is secured to the shaft, 14. The specification says so:

"A cam ring, 31, rests on the anti-friction bearing, 23, and rotates thereon with the shaft, 14, to which it is secured."

A set screw and key are shown for securing the cam ring to the shaft. The screw can only be set against the key. As shown, the face of the key where the set screw presses against it has a slight cup-shaped depression to receive the slightly rounded end of the screw. Obviously, during adjustment, when the set screw is loosened, the cam ring is supported by the upper part of the sleeve. But in operation the cam ring is always secured rigidly to the shaft.

In the suit against the Rubsam & Hormann Brewing Company, the only difference between the two machines used is in the form of the cam. The first machine has a barrel cam, with two walls facing each other, which engage a single cam roll carried by the sealing head. In the second machine the cam ring is of the rib variety, having two walls back to back, which engage two cam rolls carried by the sealing head. The two structures are clearly equivalent, since there is no distinction in function, or mode of operation, or results obtained. Both machines have a cam ring with walls engaging the sealing head for imparting a reciprocating motion thereto upon the revolution of the shaft, as specified in the claim in issue.

Decree for complainant in both suits.